UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

|  |  |
|---|---|
| URIEL JOSE ORTEGA,<br><br>Movant,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Respondent. | Crim. Case No.: 4:14-cr-00255-BLW<br>Civil Case No.: 4:17-cv-00529-BLW<br><br>**MEMORANDUM DECISION &<br>ORDER** |

## INTRODUCTION

Before the Court is Uriel Jose Ortega's Motion to Vacate, Set Aside or

Correct Sentence Pursuant to 28 U.S.C. § 2255. Ortega contends that his

conviction should be vacated because he received ineffective assistance of counsel.

Ortega claims, among other things, that plea counsel persuaded him to plead guilty

by (1) overstating the applicable mandatory-minimum sentence; (2) seriously

underestimating the predicted sentence upon a guilty plea; and (3) incorrectly

advising Ortega about deportation risks. For the reasons explained below, the

Court will grant Ortega an evidentiary hearing regarding these claims only.

Otherwise, the Court will deny the motion.

An evidentiary hearing will be scheduled by separate notice, and the Court

will appoint counsel for Mr. Ortega. The scope of the hearing will be restricted to

Mr. Ortega's claims against plea counsel Nathan Rivera regarding the three issues flagged above. The hearing will not include claims against sentencing counsel Kelly Kumm or appellate counsel Steven Thompson.

## BACKGROUND

### 1.     The Indictment and the Motion to Suppress

On November 25, 2014, Ortega was charged in a two-count indictment with conspiracy to distribute a controlled substance and possession with intent to distribute a controlled substance. *See* 21 U.S.C. §§ 841(a)(1) and (b)(1)(A). Cr. Dkt. 1.[1] The indictment stemmed from a traffic stop where Ortega was arrested. Police found three firearms and 1.3 kilograms of methamphetamine in the car. Cr. Dkt. 29, at 3.

After he was indicted, Ortega moved to suppress evidence of the firearms and methamphetamine, arguing that his Fourth Amendment rights were violated during the traffic stop. *See Mtn. to Suppress*, Cr. Dkt. 17. The Court denied the motion, and Ortega then asked his aunt to help him retain new counsel. *See* Cr. Dkt. 77, at 88; *Motion Mem.*, Civ. Dkt. 7-3, at 41.

### 2.     The Guilty Plea

Shortly afterward, a new attorney, Nathan Rivera, visited Ortega at the

---

[1] Throughout this decision, "Civ. Dkt." refers to docket entries in the civil case (4:17-cv-529) and "Cr. Dkt." refers to docket entries in the underlying criminal case (4:14-cr-255).

county jail. Ortega says he told Rivera that he wanted to take his case to trial and Rivera agreed to do so. Civ. Dkt. 7-3, at 41. Following this meeting, Ortega called his aunt and asked her to hire Rivera. *Id.* at 41-42. On April 10, 2015, Rivera substituted in as Ortega's new attorney. Dkt. 7-2, at 2.

In May 2015, Rivera told Ortega about two different plea deals, on both occasions encouraging him to take a deal. Cr. Dkt. 7-3, at 42-43. Ortega says Rivera told him his aunt wanted Ortega to take a deal, and, further, that his aunt was unwilling to pay an additional $5,000 to take the case to trial since there was a plea available. *Id.* at 44. In a May 11, 2015 letter to Ortega, Rivera outlined Ortega's options at that point, including an explanation of potential sentences:

> Pursuant to recent conversations with you, I wanted to follow up regarding your decision to move forward to trial. As discussed on numerous occasions, given the charges that you have and the amount of evidence against you, you're looking at a mandatory minimum of 25 years should you be convicted, regardless of whether you are convicted of conspiracy or on the possession charge. In addition, the guideline range could be in the 30 year range based on aggravating factors and your criminal history.

*See Petitioner Ex. A,* Dkt. 7-5, at 3. Rivera's letter went on to state that if he pleaded guilty, Ortega would be looking at a "potential sentence in the 14 year range, with the possibility of the judge departing below the guideline ranges during sentencing." On its face, the advice about the mandatory minimum is incorrect. Both charges in the indictment carry mandatory minimum sentences of 10 years – not 25 years. *See* 21 U.S.C. § 841(b)(1)(A).

Ortega says that when the 14-year sentence range did not persuade him to plead guilty, Rivera returned to the county jail the next day and advised him that his guideline range would be 87 to 108 months if he pled to the conspiracy charge. *See* Civ. Dkt. 7-2, at 10 & 7-3, at 49. A few days later, on May 21, 2015, Ortega signed a plea agreement. He agreed to plead guilty to the conspiracy charge, and the government agreed to dismiss the possession charge. *See Plea Agmt.*, Cr. Dkt. 29, ¶ I.A. The plea agreement correctly states that the conspiracy charge "is punishable by a term of imprisonment of ten years to life, . . . ." *Id.* ¶ IV.A.

Ortega pleaded guilty during a two-day plea hearing. During the first day of the hearing, Ortega explained that he wanted to take the deal but he did not fully understand its terms and that his attorney was not taking his phone calls. *Tr.,* Cr. Dkt. 78, at 2-3. While discussing the plea agreement during this hearing, the Court explained the ten-year mandatory minimum:

> *Because of the quantities involved, it's a 10-year mandatory minimum up to life imprisonment.* Now, what the guidelines may say – the guidelines might be a lot longer if you have prior convictions, if you have a criminal record, if there are other enhancing features in this case. *But, at a minimum, you're looking at 10 years in prison.* So you need to understand that.

*Id.* at 4-5 (emphasis added).

The Court continued the change of plea hearing to the next day to give Ortega additional time to decide if he wanted to plead guilty or go to trial and whether he wanted to change counsel. *Id.* at 5-9.

The next day, the hearing resumed. Ortega told the Court he wanted to proceed with the change of plea. *Hearing Tr.*, Cr. Dkt. 55, at 3. In a colloquy with the Court, Ortega confirmed that: (1) he had had enough time to discuss the agreement with his attorney; (2) he was satisfied with his attorney's representation; and (3) he wanted to proceed with the change of plea based upon the plea agreement. *Id.* at 28. Ortega was again informed during the hearing that if he pleaded guilty, he faced a 10-year, mandatory-minimum prison sentence.

**3.      The Motion to Withdraw the Guilty Plea & Sentencing**

A few weeks after Ortega pleaded guilty, the Court granted Rivera's motion to withdraw as counsel and directed the clerk to appoint a new attorney for Ortega. *See* Cr. Dkt. 35, 36. Ortega's new attorney filed a motion to withdraw the guilty plea. Cr. Dkt. 50. In that motion, Ortega argued he should be allowed to withdraw his plea for various reasons, including that: (1) Rivera had miscalculated his criminal history points; (2) Rivera had failed to advise Ortega there would be a potential sentencing enhancement for possession of a firearm; and (3) Ortega did not understand he was pleading guilty to a conspiracy to distribute methamphetamine. *Id.* at 1-2.

The Court denied Ortega's motion to withdraw the guilty plea and sentenced him to 264 months in prison, which was a below-guidelines sentence. The Court calculated Ortega's guidelines range as 324 to 405 months, based on an adjusted

offense level of 38 and a criminal history category of IV. The guidelines

calculation for the offense level looked like this:

| Base Offense Level – § 2D1.1(c)(3) | 34 |
|---|---|
| Firearm Enhancement – § 2D1.1(b)(1) | +2 |
| Obstruction-of-Justice Enhancement – § 3C1.1 | +2 |
| **Total Offense Level** | 38 |

In the final presentence investigation report (PSR), the probation officer

calculated the guidelines range as 235 to 293 months, based on a criminal history

category of VI and a total offense level of 33 (rather than 38). An earlier PSR had

mistakenly undercalculated the guidelines range by using the guidelines applicable

to methamphetamine mixture, rather than those applicable to pure

methamphetamine. *See July 7, 2015 PSR*, Dkt. 38, ¶ 81 (calculating the guidelines

range as 151 to 188 months, based on a total offense level of 29 and a criminal

history category of VI).

The five-level difference in the total offense level of 33 in the final PSR,

compared to the total offense level of 38, is based on two things: First, the

probation officer anticipated a three-level decrease for acceptance of responsibility,

but the Court independently found that defendant had not accepted responsibility.

*See Tr.*, Cr. Dkt. 82 at 47:9 to 48:4. Second, the probation officer did not apply a

two-level enhancement for obstruction of justice. At sentencing, the Court
overruled Ortega's objections to the firearm enhancement and the obstruction-of-
justice enhancement. *See Tr.,* Cr. Dkt. 82, at 20:10 to 25:25.

### 4.    Ortega's Appeal

Ortega appealed. *See* Cr. Dkt. 66. On direct appeal, he argued that his plea
was not knowing and intelligent because his attorney did not inform him of all the
terms. He also said he was misled as to the operations of the Sentencing Guidelines
specific to his criminal history and whether he would be entitled to an adjustment
for playing a minor role in the offense. The Ninth Circuit dismissed the appeal in
light of the appeal waiver in the plea agreement. *See Apr. 24, 2017 Order*, Cr. Dkt.
90.  The circuit held that "the record does not support Ortega's contentions that his
plea was involuntary or that the government breached the plea agreement." *Id.*
Otherwise, the Ninth Circuit declined to address Ortega's claim for ineffective
assistance of counsel. *Id.* ("To the extent Ortega seeks to raise a claim of
ineffective assistance of counsel, we decline to address this issue on direct
appeal.") (citing *United States v. Rahman*, 642 F.3d 1257, 1259-60 (9th Cir. 2011)).

### 5.    Ortega's § 2255 Motion

In his pending § 2255 motion, Ortega says counsel provided ineffective
assistance at various points during the proceedings, from plea negotiations through
appeal. Specifically, he claims that before he pleaded guilty, attorney Nathan

Rivera:

(1)    provided grossly inaccurate sentencing information; *see* Civ. Dkt. 7-2 at 4;

(2)    failed to provide critical discovery, *id.* at 21;

(3)    failed to correctly advise him about the deportation consequences of a plea, Civ. Dkt. 7-3, at 32;

(4)    operated under a conflict of interest, *id.* at 41;

(5)    improperly advised Ortega to enter into a plea agreement, *id.* at 49; and

(6)    failed to warn Ortega of a potential two-level firearm enhancement, Civ. Dkt. 7-4, at 68.

Ortega says his next attorney, Kelly Kumm, performed deficiently by:

(1)    not promptly filing a motion to withdraw Ortega's guilty plea and otherwise failing to protect Ortega's interests in connection with the withdrawal motion, *see* Civ. Dkt. 7-4, at 52;

(2)    failing to adequately challenge the obstruction-of-justice sentencing enhancement, *id.* 59;

(3)    failing to object to the government's alleged breach of the plea agreement, *id.*, at 65;

(4)    failing to adequately object to the firearm enhancement, *id.*, at 68; and

(5)    failing to review or provide lab reports detailing the purity levels of the methamphetamine at issue in this case, *see* Civ. Dkt. 15, at 1.

Finally, Ortega says appellate counsel Steven Thompson performed deficiently by failing to adequately address the obstruction-of-justice enhancement on appeal. *See* Civ. Dkt. 7-4, at 59.

## LEGAL STANDARD

28 U.S.C. § 2255 provides four grounds on which a court may grant relief to a federal prisoner who challenges the imposition or length of his or her custody: (1) "that the sentence was imposed in violation of the Constitution or laws of the United States;" (2) "that the court was without jurisdiction to impose such sentence;" (3) "that the sentence was in excess of the maximum authorized by law;" and (4) that the sentence is otherwise "subject to collateral attack." Ortega challenges his sentence under the first ground for relief under Section 2255.

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that a court may summarily dismiss a § 2255 motion "[i]f it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief." A court need not hold an evidentiary hearing in a § 2255 case "when the issue of the prisoner's credibility can be conclusively decided on the basis of documentary testimony and evidence in the record." *Frazer v. United States*, 18 F.3d 778, 781 (9th Cir. 1994) *overruled on other grounds by Ellis v Harrison*, 891 F.3d 1160 (9th Cir. 2018). The court may dismiss the § 2255 motion at other stages of the proceeding such as pursuant to a motion by respondent, after consideration of the answer and motion, or after consideration of the pleadings and an expanded record. *See* Advisory Committee Notes following Rule 8 of the Rules Governing Section 2254, incorporated by reference into the

Advisory Committee Notes following Rule 8 of the Rules Governing 2255. If the court does not dismiss the proceeding, the court then determines, pursuant to Rule 8, whether an evidentiary hearing is required. A hearing is not required if, in light of the record, the movant's allegations are "palpably incredible or patently frivolous." *Joseph v. United States*, 583 F. App'x 830, 831, No. 13-16760, 2014 WL 3702994 (9th Cir. 2014) (unpublished) (citing *United States v. Mejia-Mesa*, 153 F.3d 925, 931 (9th Cir.1998)).

## ANALYSIS

### 1.  Claim One: Plea Counsel's Advice Regarding Comparative Risks of Pleading Guilty versus Standing Trial[2]

Ortega says Rivera committed numerous errors that led him to plead guilty and that, but for these errors, he would have insisted on a trial.

### A. The Applicable Legal Standard at the Plea Stage

"The Sixth Amendment guarantees a defendant the effective assistance of counsel at 'critical stages of a criminal proceeding,' including when he enters a guilty plea." *Lee v. United States*, 137 S. Ct. 1958, 1964 (2017) (citing *Lafler v. Cooper,* 566 U.S. 156, 165 (2012)). To demonstrate that his attorney was

---

[2] In this decision, the Court has recast Ortega's claims against Rivera as Claims 1-3. In his pending motion, Ortega alleged five separate, numbered claims against Rivera, along with an unnumbered claim relating to a firearm enhancement. The decision here addresses each of Ortega's claims; they are renumbered here only because some of his claims overlapped others.

constitutionally ineffective, Ortega must show that the attorney's representation "fell below an objective standard of reasonableness" and that he was prejudiced as a result. *Strickland v. Washington*, 466 U.S. 668, 688 (1984).

When evaluating an attorney's performance, there is a strong presumption that it falls "within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. The reason being that, for the defendant, "[i]t is all too tempting . . . to second-guess counsel's assistance after conviction or adverse sentence . . . ." *Id.* And for the Court, "it is all too easy to conclude that a particular act or omission of counsel was unreasonable in the harsh light of hindsight." *Bell v. Cone*, 535 U.S. 685, 702 (2002).

Often, claims of ineffective assistance of counsel involve claims that the attorney erred "'during the course of a legal proceeding' – for example, that counsel failed to raise an objection at trial or to present an argument on appeal." *Lee*, 137 S. Ct. at 1964. In those situations, defendants demonstrate prejudice by showing "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Roe v. Flores-Ortega,* 528 U.S. 470, 482 (2000). But where a defendant argues that his counsel's deficient performance led him to accept a guilty plea rather than go to trial, the defendant demonstrates prejudice not by showing that he would have succeeded at trial, but, instead, by showing a "'reasonable probability that, but for counsel's errors, he

would not have pleaded guilty and would have insisted on going to trial.'" *Lee*, 137 S. Ct. at 1965.

**B. Rivera's Advice Regarding the Risks of Trial**

Ortega's allegations regarding the allegedly "grossly inaccurate sentencing information" Rivera provided him fall into two categories. First, Ortega says Rivera overstated the risks of going to trial by informing him he would be subject to a 25-year mandatory minimum sentence. Second, he says Rivera made various errors in predicting his sentence if he pleaded guilty. The upshot, according to Ortega, is that Rivera persuaded him to plead guilty by making the plea deal look more attractive than it was and the risk of trial look worse than it was.

Turning first to Rivera's advice about the risks of trial, Rivera told Ortega that if he went to trial and was convicted on either charge in the indictment, he would be subject to 25-year, mandatory-minimum sentence. *See May 11, 2015 Letter*, Cr. Dkt. 63-1, Ex. A. In fact, the mandatory-minimum sentence for either charge in the indictment was 10 years – not 25. *See* 21 U.S.C. § 841(b)(1)(A).

Rivera says he correctly advised Ortega because the prosecutor was planning to seek an § 851 enhancement and indict on a § 924(c) charge. *See Rivera Dec.*, Civ. Dkt. 38-5, ¶ 6. Ortega disputes this; he says Rivera is making this up after the

fact.[3] He points out that Rivera does not identify any predicate drug felony that would qualify him for the 10-year enhancement. Plus, the letter Rivera sent to Ortega doesn't say anything about additional charges or a § 851 enhancement. On the other hand, the letter does obliquely refer to the fact that the plea offer would allow Ortega to "avoid the *additional* mandatory minimums, . . . ." *May 11, 2015 Letter to Ortega*, Cr. Dkt. 63-1, Ex. A (emphasis added).

Citing the cover sheet to the indictment, along with a detention motion, the government says Ortega was indisputably advised that both counts carried 10-year mandatory minimums. *See Response*, Civ Dkt. 38, at 16. Both of these documents, however, pre-date Rivera's advice about the 25-year mandatory minimum. Plus, the detention motion doesn't refer to mandatory minimums at all, and the cover sheet to the indictment says only that the "Penalties" for each count are "10 years to life imprisonment *and/or* $10,000,000 fine; . . . ." Cr. Dkt. 1-1 (emphasis added). That blurb does not plainly spell out the 10-year mandatory minimum Ortega faced.

---

[3] Ortega advances a similar argument in a motion for reconsideration filed in his criminal case. *See* Cr. Dkt. 102. In this motion, Ortega asks the Court to reconsider its earlier denial of his motion to withdraw his guilty plea. The government correctly points out that, among other things, the motion for reconsideration was prematurely filed, given that the Court had not yet ruled on the § 2255 petition. Ortega conceded this point and then asked the Court to treat the motion as an amended petition. The Court is not persuaded to do so and will therefore deny that request. The Court will, however, consider the arguments and evidence raised in the motion for reconsideration in ruling on this § 2255 motion.

On this record, the Court find it necessary to conduct an evidentiary hearing to determine whether Rivera misinformed Ortega about the applicable mandatory minimum. Even though the Court correctly informed Ortega of the 10-year mandatory-minimum sentence he would face *if he pleaded guilty*, it was up to Rivera to tell Ortega of the comparative sentencing exposure he faced *if he stood trial*. Theoretically, when the Court told Ortega that there was a 10-year mandatory minimum sentence for the conspiracy charge (to which he was pleading guilty), Ortega might have deduced there was also a 10-year mandatory minimum applicable to the possession charge (to which he did not plead). But Ortega is not an attorney, so even after the Court gave him correct mandatory minimum on the conspiracy count, he might not have questioned the accuracy of the reported 25-year mandatory minimum on the possession charge. In that regard, Ortega says he believed the possession charge was more serious, so he continued to believe – wrongly – that the possession charge carried a 25-year, mandatory-minimum sentence. *See, e.g.*, Civ. Dkt. 7-3, at 34. Put differently, Ortega says notwithstanding the Court's correct warning regarding the 10-year mandatory-minimum sentence, he still had an inaccurate picture of the comparative risks of pleading guilty versus going to trial.

 A comparative-risk analysis typically drives a defendant's decision-making process when a plea is offered. *See generally Lee v. United States*, 137 S. Ct. 1958,

1964 (2017). As one court observed, "When a plea offer is made, 'knowledge of the comparative sentence exposure between standing trial and accepting a plea offer will often be crucial to the decision whether to plead guilty.' Accordingly, the lawyer 'should usually inform the defendant of the strengths and weaknesses of the case against him, as well as the alternative sentences to which he will most likely be exposed.'" *Carrion v. Smith*, 644 F. Supp. 2d 452, 465 (S.D.N.Y. 2009) (citing *Purdy v. United States*, 208 F.3d 41, 45 (2d Cir. 2000)). Here, if Rivera overstated the mandatory-minimum sentence by 15 years, this could support a finding of deficient performance. *See generally* 16A Fed. Proc. L. Ed., *Habeas Corpus*, § 41:446 ("relief is available under 28 U.S.C.A. § 2255 on a claim that the applicant's guilty plea was the result of counsel's mistaken advice that a maximum sentence upon conviction after trial would be much greater than that which the law would actually have allowed").[4]

---

[4] *See also Lee*, 137 S. Ct. at 1966-67 (explaining, as a hypothetical example, that "a defendant with no realistic defense to a charge carrying a 20-year sentence may nevertheless choose trial, if the prosecution's plea offer is 18 years"); *United States v. Bui*, 795 F.3d 363 (3d Cir. 2015) (counsel's erroneous advice that defendant was eligible for safety valve relief was deficient performance); *Cooks v. United States*, 461 F.2d 530, 532 (5th Cir. 1972) (guilty plea invalid where counsel wrongly advised defendant he would face a sentence six times more severe than the law allowed); *United States v. Marcos-Quiroga*, 478 F. Supp. 2d 1114 (N.D. Iowa 2007) (defendant satisfied the deficient-performance prong where counsel failed to advise him that he would be sentenced as a career offender); *United States v. Gaviria*, 116 F.3d 1498 (D.C. Cir. 1997) (counsel performed deficiently by wrongly telling defendant he would be sentenced as a career offender); *United States v. Day*, 969 F.2d 39, 43 (3d Cir. 1992) ("[F]amiliarity with the structure and basic content of the Guidelines (including the definition and implications of career offender status) has become a necessity for counsel who seek to give effective representation."); *cf. United States v. Manzo*, 675 F.3d 1204, 1208-10 (9th Cir. 2012) (Continued)

**MEMORANDUM DECISION & ORDER - 15**

## C. The Alleged Erroneous Advice Regarding Risks of a Guilty Plea

Ortega next alleges that Rivera made the plea deal look better than it was by telling Ortega that (1) he would not be deported if he accepted a plea, and (2) his guidelines sentencing range would be 87 to 108 months. These allegations, which are disputed by Rivera, further support the need for an evidentiary hearing. *See generally United States v. Chacon-Palomares*, 208 F.3d 1157, 1159 (9th Cir. 2000) (remanding a § 2255 action for an evidentiary hearing where counsel allegedly underestimated defendant's sentence by 102 months and the court was confronted with conflicting affidavits); *United States v. Burrows*, 872 F.2d 915, 917 (9th Cir. 1989) (evidentiary hearings are particularly appropriate when "claims raise facts which occurred out of the courtroom and off the record").

### 1. Advice Regarding the Benefits of Accepting a Plea: Deportation

Regarding the risk of deportation, Ortega says Rivera told him it would be better to plead guilty to the drug conspiracy charge rather than the drug possession charge from an immigration standpoint. Rivera reportedly told Ortega that a conspiracy charge was not violent, meaning Ortega would not be deported if he pleaded guilty to the conspiracy charge, as opposed to the possession charge. Civ.

---

(finding deficient performance where counsel incorrectly anticipated that defendant's offenses would be grouped for sentencing; because they were not grouped, defendant faced a sentencing range of 292 to 365 months, rather than the expected range of 135 to 168 months).

Dkt. 7-3, at 32-33. Ortega says the immigration consequences were important to him because he wanted to be able to take care of his aging grandparents who live in Twin Falls, Idaho. *Id.* at 37-38.

Here, there is no question that if Ortega were not a citizen of the United States, he would be subject to deportation if he pleaded guilty to either charge. Convictions under 21 U.S.C. §§ 846, 841(a)(1), and (b)(1)(A) are defined as an "aggravated felony" pursuant to 8 U.S.C. §§ 1101(a)(43)(B) & (U). *See Gonzales-Dominguez v. Sessions*, 743 F. App'x 808, 808 (9th Cir. 2018). An alien convicted of an aggravated felony is "conclusively presumed" to be removable under immigration law. 8 U.S.C. § 1228(c). A noncitizen convicted of an aggravated felony is not eligible for cancellation of removal. 8 U.S.C. § 1229b(a)(3). Accordingly, because the law is "'succinct, clear, and explicit' that the conviction renders removal virtually certain," Rivera was obligated to advise Ortega that if he was indeed a non-citizen, his removal would be a virtual certainty. *United States v. Rodriguez-Vega*, 797 F.3d 781, 786 (9th Cir. 2015) (citing *Padilla v. Kentucky*, 559 U.S. 356, 368-69 (2010)). If, in fact, Rivera failed to advise Ortega that he was pleading guilty to a removable offense, this would constitute deficient performance. *Cf. Lee*, 137 S. Ct. at 1964 ("The Government concedes that [defendant's] plea-stage counsel provided inadequate representation when he assured [defendant] that he would not be deported if he pleaded guilty.").

Rivera disputes Ortega's assertions. He says he told Ortega he was pleading guilty to a removeable offense. The Court will conduct an evidentiary hearing to resolve this factual dispute.

The Court gave Ortega the following warning during the plea hearing:

> And I have no reason to know if this is true or not,[5] but if you're not a citizen of the United States, a felony conviction will affect your ability to remain in the United States legally in the future.

Regardless of whether this warning was clear enough, the Ninth Circuit has held that a court's performance during a plea colloquy is "irrelevant to the question whether counsel's performance fell below an objective standard of reasonableness." *Rodriguez-Vega*, 797 F.3d at 787 (citing *Padilla*, 559 U.S. at 371); *see also United States v. Urias-Marrufo*, 744 F.3d 361, 369 (5th Cir. 2014) (cited approvingly in *Rodriguez-Vega*, 797 F.3d at 787) ("It is counsel's duty, not the court's, to warn of certain immigration consequences, and counsel's failure cannot be saved by a plea colloquy.").

## 2. Advice Regarding the Benefits of Accepting a Plea: Sentencing Prediction

Ortega says that in addition to wrongly informing him about the applicable

---

[5] The Court included this proviso because, during the sentencing hearing, there was a question as to whether Ortega was a non-citizen. *See Dec. 22, 2015 Tr.*, Cr. Dkt. 82, at 28:3 (Ortega's attorney stated, "We don't know where he was born."). The PSR, however, indicates that Ortega advised the PSR-writer that he was born in Mexico. *See PSR*, Cr. Dkt. 59, ¶ 66, at 15.

mandatory minimums and deportation risks, Rivera also made errors in predicting

Ortega's potential guidelines sentence upon a guilty plea. Ortega contends that

Rivera's prediction was flawed because he made the following errors:

- *Base Offense Level.* Ortega says Rivera mistakenly calculated the base offense level by referring to the guidelines for methamphetamine mixture rather than actual methamphetamine. The base offense level for methamphetamine mixture in this case would be 30; the base offense level for actual methamphetamine is 34.

- *Criminal History Category.* Ortega says Rivera miscalculated his criminal history category by assuming that prior convictions for driving without privileges, false reporting, or resisting arrest would not count. Based on these presumptions, Rivera allegedly tallied up six criminal history points, which would put Ortega in Criminal History Category III. In fact, these types of charges do count, which ultimately meant that Ortega belonged in criminal history category VI.

- *Firearm Enhancement.* Ortega says Rivera failed to anticipate or warn him of the potential for a two-level firearm enhancement.

Ortega says that the result of all these errors is that Rivera told him his

guidelines range sentence would be 87 to 108 months – based on total offense level

27 and criminal history category III – when, in reality, Rivera should have

predicted an advisory guidelines range of 235 to 293 months – based on total

offense level 33 and criminal history category VI. *See Motion*, Civ. Dkts. 7-2, at

10-11; 7-3, at 44.

Rivera disputes Ortega's contention that he provided inaccurate sentencing

advice. He says he discussed a number of potential sentences with Ortega, that he

warned him of a 20-year sentence, and that he correctly predicted the base offense level and the criminal history category. Rivera's May 11, 2015 letter, however, states that Ortega would face a guideline in the 14-year range, with the possibility of less time.

Given the conflicting evidence on this point, the Court will conduct an evidentiary hearing. The Court notes, however, that Rivera cannot be faulted for failing to predict that the Court would apply a two-level enhancement for obstruction of justice, which meant Ortega also did not receive a three-level reduction for acceptance of responsibility. Likewise, it appears Rivera reasonably could have expected at least a two-level reduction for substantial assistance, as the plea agreement anticipated cooperation, yet Ortega ultimately did not cooperate. *See Plea Agmt.*, Cr. Dkt. 29, ¶ VI; *Rivera Dec.* ¶ 6.c. Rivera reasonably could have anticipated that Ortega's offense level would be at least seven levels lower than the level the Court calculated during the sentencing hearing (and potentially nine levels lower): 3 levels for acceptance of responsibility; 2 levels for obstruction of justice; and 2 to 4 levels for substantial assistance.

Also, as a point of clarification, the purpose of the hearing will be to hear additional evidence regarding the advice Rivera provided. The hearing is *not* intended to address: (1) whether Ortega was confused about the terms of the plea agreement itself; or (2) whether the government breached the plea agreement. The

Ninth Circuit already answered those questions on direct appeal. To the extent Ortega continues to advance these arguments, the Court denies the claims.

### D. Prejudice

A separate question is whether Rivera's allegedly deficient performance prejudiced Ortega, thereby satisfying the second prong of the *Strickland* test. "To satisfy the prejudice component in the context of a guilty plea, the defendant 'must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" *Iaea v. Sunn*, 800 F.2d 861, 865 (9th Cir. 1986) (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)).

To make this showing, the defendant must demonstrate "special circumstances that might support the conclusion that [defendant] placed particular emphasis" on the subject of the attorney's error. *Hill*, 474 U.S. at 60. Evidence of these circumstances must be present in the record, and not merely after-the-fact assertions that Ortega would have gone to trial but for the attorney's mistake. *See, e.g.*, *Lopez v. Candelaria*, 19 F. App'x 649, 651 (9th Cir. 2001) (finding no prejudice where defendant declared in a sworn affidavit that he would not have pleaded guilty if he had not been misinformed by his attorney, but the "assertion is not borne out by the record"). *Contra Iaea*, 800 F.2d at 865 (noting that "[t]he

record is replete with evidence that [defendant] was very reluctant to plead guilty and that defense counsel . . . had a great deal of trouble convincing him to do so").

In *Iaea*, for example, the court suggested that the defendant would likely be able to show prejudice. *Iaea*, 800 F.2d at 865. The defendant in that case "sought a trial and maintained his factual innocence to the end; he supplied names of witnesses to support his theory of innocence and on his guilty plea form, he crossed out the words 'I believe myself to be guilty,' and replaced them with 'I do not wish to go to trial.' His brother threatened to withdraw bail, and his lawyer threatened to withdraw counsel if Iaea did not plead guilty." *United States v. Moore*, Nos. 89-10334, 89-10335, 1990 WL 113109, at *5 (9th Cir. Aug. 3. 1990) (contrasting the facts of *Iaea* with the present case, wherein the defendant's only evidence of prejudice was a statement that he would have gone to trial absent counsel's error, and finding that this was insufficient to show prejudice).

The Court will determine prejudice after the evidentiary hearing. In the context of plea advice, the question is whether Ortega would have decided to risk a trial because the plea agreement wasn't attractive enough in comparison to the risks of trial. The Court will examine the record for *contemporaneous* evidence that immigration consequences were a determinative issue in Ortega's decision to plead guilty; after-the-fact justifications are not sufficient. As the Supreme Court recently explained, "Courts should not upset a plea solely because of *post hoc*

assertions from a defendant about how he would have pleaded but for his attorney's deficiencies. Judges should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences." *Lee*, 137 S. Ct. at 1967.

### E. Appointment of Counsel

The Court will appoint counsel to represent Ortega at the evidentiary hearing. *See, e.g., United States v. Duarte-Higareda*, 68 F.3d 369, 370 (9th Cir. 1995) (failure to appoint counsel if appellant remains indigent at time of evidentiary hearing is clear error); *see generally* Rule 8(c) of the Rules Governing § 2255 Proceedings ("If an evidentiary hearing is warranted, the judge must appoint an attorney to represent a moving party who qualifies to have counsel appointed under 18 U.S.C. § 3006A"); 18 U.S.C. § 3006A (allowing for the appointment of counsel when the interests of justice so require and the movant is financially unable to obtain representation).

## 2. Claim Two: Plea Counsel's Alleged Conflict of Interest

The Court will deny Ortega's claim of ineffective assistance based on Rivera's alleged conflict of interest. Here, Ortega points out that his aunt was paying Rivera. When the government offered a plea, she was unwilling to pay Rivera to take the case to trial. Ortega says that at that point, Rivera wrongfully persuaded him to plead guilty and told Ortega he could not fire him "because Ortega was not the person paying the bills." Civ. Dkt. 7-3, at 43.

There are several problems with this argument.

First, when he appeared at the scheduled plea hearing, Ortega said that although he had signed a plea agreement, he now had serious reservations about the plea deal. He said he had tried to call his attorneys but they were not answering the phone. The Court rescheduled the plea hearing for the next day so that Ortega could confer with his attorney. The Court also clearly advised Ortega that he was not bound to his plea agreement:

> [I]f Mr. Ortega concludes, even though he signed the plea agreement, that he's just not going to go forward with the plea, then that's fine. We'll issue an order and we'll start picking a jury on the 16th of June, about two weeks from tomorrow, and we'll proceed to trial.

*June 1, 2020 Tr.*, Dkt. 78, at 7:9-14. The next day, after conferring with his attorney, Ortega said that he wanted to move forward with the plea. He testified that he was satisfied with his counsel's representation; he understood he was giving up his right to a trial; and he understood that if he could not afford an attorney, an attorney would be appointed to represent him at trial. *See June 2 Hearing Tr.*, Dkt. 55, at 5:7 to 12 & 7:17 to 8:9.

In the face of this testimony, Ortega cannot now credibly argue that he only pleaded guilty because his aunt had refused to continue footing the legal bills if he did not take the plea deal. As just shown, Ortega had been made aware that an

attorney would be appointed for him if he could not afford to pay for representation.

Otherwise, to the extent Ortega is generally arguing that his attorney was necessarily conflicted because a third party was paying the legal bills, the Court is not persuaded.

The Supreme Court has warned of "the inherent dangers that arise when a criminal defendant is represented by a lawyer hired and paid by a third party." *Wood v. Georgia*, 450 U.S. 261, 268-69 (1981). To establish a Sixth Amendment violation, however, Ortega must show "that an actual conflict of interest adversely affected his lawyer's performance." *Garcia v. Bunnell*, 33 F.3d 1193, 1198 (9th Cir. 1994) (quoting *Cuyler v. Sullivan*, 446 U.S. 335, 348 (1980)). Ortega must prove an actual conflict, not just a possibility of conflict, "through a factual showing on the record." *Morris v. California*, 966 F.2d 448, 455 (9th Cir. 1991). Once an actual conflict is shown, Ortega need demonstrate only "that some effect on counsel's handling of particular aspects of the trial was 'likely.'" *United States v. Miskinis*, 966 F.2d 1263, 1268 (9th Cir. 1992) (citing *Mannhalt v. Reed*, 847 F.2d 576, 583 (9th Cir. 1988)). Prejudice is presumed. *Id.* If, however, there is only a possibility of conflict, Ortega must meet the "performance and prejudice" standard of *Strickland*. *See id.*

Ortega has not shown an actual conflict of interest. The Ninth Circuit has

clarified that "the mere fact that counsel has a profit motive in a representation is insufficient to show that counsel's interests came in direct conflict with those of the client. *United States v. Walter-Eze*, 869 F.3d 891, 902 (9th Cir. 2017). "Lawyers almost always undertake representation of clients because of their desire to profit from the representation. . . . The fact that an attorney undertakes the representation of a client because of a desire to profit does not by itself create [a] direct 'actual' conflict of interest." *Bonin v. Calderon*, 59 F.3d 815, 826 (9th Cir. 1995).

The Ninth Circuit has nonetheless recognized instances where an attorney's financial interests do result in a conflict with their client's interests at trial. Although ultimately finding that no conflict existed, in *Bonin v. Calderon*, 59 F.3d 815 (9th Cir. 1995), the court observed that an "actual" conflict arises where circumstances "squarely place[ ] the interests of the client in opposition to those of the attorney, and [are] likely to compromise a reasonable attorney's ability to comply with his legal and ethical obligation to represent his client with undivided loyalty." *Id.* at 827. That is, the presumption of ethical behavior that we afford to attorneys must necessarily fade where, as it is argued here, counsel explicitly favors his own pecuniary interests above his client's interests.

While Rivera did have something to gain financially from his continued representation of Ortega, as already noted, "[t]he fact that an attorney undertakes

the representation of a client because of a desire to profit does not by itself create [a] direct 'actual' conflict of interest." *Bonin*, 59 F.3d at 826; *see Walter-Eze*, 869 F.3d at 902 ("As human beings, attorneys always have interests of their own independent of those of their clients. Thus, courts have held that as a general matter, there is a presumption that the lawyer will subordinate his pecuniary interests and honor his primary professional responsibility to his clients in the matter at hand.") (citations and internal quotation marks omitted); *see also Williams v. Calderon*, 52 F.3d 1465, 1473 (9th Cir. 1995) ("[T]he fact that payment for any investigation or psychiatric services could have come from counsel's pocket forced counsel to choose between Williams' interests and his own" created "no conflict of constitutional dimension.").

### 3.  Claim Three: Plea Counsel's Failure to Share Discovery

Ortega alleges that Rivera failed to share two "critical" discovery items with him – an SD card and a property receipt for three guns. The SD card and the guns were found during the July 10, 2014 traffic stop that led to Ortega's arrest. Ortega and Kimberly Rose were both arrested after the stop. Civ. Dkt. 7-2, at 21. During the initial intake at the Bonneville County jail, Ortega and Rose were searched. *Id.* Police found a flash drive in Rose's bra. *Id.* Ortega says he didn't know Rose had the SD card until after he had accepted the plea deal. *Id.* at 22-23.

This flash drive contained over 5000 images, some of which showed Rose engaging in illegal drug use and firing a hand gun. *Id.* at 22. Ortega now says that when he first saw these images – in July 2015, when Kumm visited him at the jail – he "instantly recognized that had he been apprised of and seen the evidence prior to his guilty plea, he would have gone to trial rather than accepting the plea offered by the Government." *Id.*

But even accepting Ortega's assertion that he saw the images for the first time in July 2015 – after he had accepted the plea – he filed a motion to withdraw his plea in September 2015 and the images were not even mentioned. So even assuming deficient performance, an objective look at the record shows Ortega would not be able to persuade the Court that the images were the determinative factor in whether Ortega would plead guilty or stand trial. Thus, on this point, he cannot demonstrate prejudice. *See Lafler*, 566 U.S. at 163 ("In the context of pleas a defendant must show the outcome of the plea process would have been different with competent advice.").

As for the firearms, three firearms were discovered during the traffic stop: two from Rose's purse and one from a lockbox in the back of the vehicle, which was registered in Rose's name. Civ. Dkt. 7-2, at 23, 27. Ortega claims the discovery of firearms remained unknown to him until after he had already accepted the plea. *Id.* at 23. But this directly contradicts what he told law enforcement

during the traffic stop – that he had purchased the gun in the lockbox, and that he knew to whom the two guns found in the purse belonged. Cr. Dkt. 18-2, at 12. Additionally, a report with this information was attached to the motion to suppress filed in his case. Cr. Dkt. 18-1 and 18-2. Finally, Ortega was charged in state court with carrying a concealed weapon without a permit. Civ. Dkt. 38, Ex. 2. Accordingly, the Court is not persuaded by Ortega's argument that the alleged failure to timely share discovery items with him resulted in ineffective assistance under *Strickland*.

**4.     Sentencing and Appellate Counsel's Alleged Errors**

**A.     The Withdrawal Motion**

Ortega says Kumm did not bring the motion to withdraw the guilty plea promptly enough. The Court does not find this argument persuasive. Kumm filed the motion roughly six weeks after being appointed, and there is no indication that the Court viewed the motion as untimely. Put differently, it wouldn't have mattered if Kumm had filed the motion earlier.

Otherwise, Ortega argues that Kumm as deficient in various ways in advancing the motion to withdraw. For example, Ortega says that during the hearing, "Counsel essentially abandoned his client when he made not one objection to the line of questioning by the Government or displayed any attempt to prevent possible perjury allegations by momentarily halting the proceedings upon

questioning designed to trick his client into admissions of perjury concerning early testimony during the Entry of Plea colloquy." *Motion,* Dkt. 7-4, at 54. The Court finds no basis for this argument, or the other arguments that Kumm performed deficiently in filing or arguing the withdrawal motion. Accordingly, the Court will deny this claim.

### B.      The Firearm Enhancement

The Court will deny also Ortega's claim regarding Kumm's allegedly deficient performance regarding the two-level firearm enhancement. Ortega claims that before the sentencing hearing, Kumm failed to warn Ortega about the consequences of a firearm enhancement and during the hearing gave "little more than a token effort" to object to the enhancement. *See Motion*, Dkt. 7-4, at 69.

Kumm filed a written objection to the firearm enhancement in the PSR, and he adequately raised the issue during the sentencing hearing. The Court would not have changed its mind if Kumm had discussed the issue further. Accordingly, because Ortega cannot demonstrate deficient performance or prejudice, the Court will deny this claim.

### C.      Obstruction-of-Justice Enhancement

Ortega argues that Kumm and appellate counsel performed deficiently with respect to the Court's imposition of a two-level obstruction-of-justice enhancement. *See* U.S.S.G. § 3c1.1. The Court applied this enhancement after

observing that Ortega had made various false statements and had threatened witnesses and co-defendants. *Dec. 22 Hearing Tr.*, Dkt. 82, at 46-47. Ortega says the Court did not provide sufficiently detailed findings to support an obstruction-of-justice enhancement for the false statements. *See Am. Motion,* Dkt. 7-4, at 59-60 (citing *United States v. Castro-Ponce*, 770 F.3d 819 (9th Cir. 2014) *and United States v. Jiminez*, 300 F.3d 1166 (9th Cir. 2007)). But even assuming, for the sake of argument, that more detailed findings were necessary, other factors independently support the enhancement. *See Dec 22, 2015 Hearing Tr.*, Dkt. 82, at 47 ("[T]here's also threatening witnesses and co-defendants. The note that apparently was sent to Ms. Rose . . . [and] [t]he suggestion through Mr. Taylor that he [Ortega] was attempting to get at Corporal Cox, all of those are additional factors."). As such, even assuming deficient performance – which the Court does not find – Ortega cannot establish prejudice. The Court will therefore deny this claim, both as to Mr. Kumm and Mr. Thompson.

###    D.    Methamphetamine Purity – Lab Reports

Ortega argues that attorney Kelly Kumm did not review the lab purity reports, admitted he wouldn't have understood them if he did, and refused to provide the reports to Ortega. Ortega suggests that if he had seen the lab purity reports earlier, he would not have pleaded guilty because he would have been informed that the pure meth guidelines applied, rather than the meth mixture

guidelines. This aspect of the Ortega's claim is subsumed in his claim against Rivera, regarding Rivera's alleged failure to use the correct guidelines when predicting a sentence.

Ortega also argues this alleged failure by Kumm as a springboard into an argument that he should be allowed to withdraw his plea because in other, later methamphetamine sentencings, this Court has expressed concerns regarding the sentencing guidelines' distinction between purity levels as an accurate indicator of culpability and a defendant's role in the underlying offense. *See* Civ. Dkt. 15, at 1-2. In essence, he is faulting his attorney for not advancing an argument that this Court had not yet accepted. Kumm cannot be faulted for such a "failure." Plus, in a larger sense, Ortega is arguing that his sentence is excessive. The Ninth Circuit already rejected a similar argument on appeal. *See Gvt. Response*, Civ. Dkt. 29, at 8 (citing Ninth Circuit appeal, *United States v. Ortega,* Appeal No. 15-30397, App. Dkt. 23). The Court will therefore deny Ortega's motion based on Kumm's alleged failures relating to the lab report, finding no deficient performance or prejudice.

### E. Counsel's Alleged Failure to Argue that the Government Breached the Plea Agreement

Ortega's next argument arises out of the government's decision to argue that Ortega had obstructed justice. The Court agreed and imposed a two-level enhancement, which, in turn, meant that Ortega did not receive the three-level acceptance-of-responsibility reduction. Put differently, Ortega's total offense level

jumped up by five levels because the Court concluded he had obstructed justice and failed to accept responsibility.

Ortega says Kumm should have responded by arguing at the sentencing hearing that the government had breached the terms of the plea agreement by asking for the obstruction-of-justice enhancement. *See Am. Mtn.*, Dkt. 7-4, at 65.

Ortega raised these issues on direct appeal. *See* Civ. Dkt. 38, at 34. In response, the government filed a motion to dismiss arguing that the appeal waiver in the plea agreement was valid and this claim was foreclosed by the waiver. App. Dkt. 44-1. The Ninth Circuit agreed, finding "[t]he record does not support Ortega's contentions that his plea was involuntary or that the government breached the plea agreement" and dismissed the appeal. Civ. Dkt. 38, Ex. 7.

Because the Ninth Circuit has already concluded that the factual record does not support a finding that the government breached the plea agreement, Ortega cannot make out a claim that attorney Kumm provided ineffective assistance by failing to advance such an argument. Plus, Kumm *did* object to the imposition of the obstruction-of-justice enhancement. The Court will therefore deny this claim.

## ORDER

**IT IS ORDERED that**:

1. Movant Uriel Ortega's Motion to Vacate, Set Aside or Correct By A Person in Federal Custody Pursuant to 28 U.S.C. § 2255 (Civ. Dkt. 7; Cr. Dkt. 94)

is **GRANTED** in part and **DENIED** in part as follows:

    a.  Ortega's claims against sentencing counsel Kelly Kumm and appellate counsel Steven Thompson are DENIED.

    b.  Ortega's claims against plea counsel Nathan Rivera are GRANTED to the extent that the Court will conduct an evidentiary hearing regarding Ortega's claim that Rivera: (1) overstated the applicable mandatory-minimum sentence; (2) seriously underestimated the predicted sentence upon a guilty plea; and (3) incorrectly advised Ortega about deportation risks. In all other respects, Ortega's claims against Rivera are DENIED.

2. The Clerk is directed to appoint counsel to represent Ortega at the evidentiary hearing.

3. Within 30 days of this Order, Ortega shall submit an updated financial affidavit, under seal, to establish that he cannot afford to retain counsel.

4. Ortega's Motions to Expedite (Civ. Dkts. 49 & 51) are **DEEMED MOOT**.

5. Ortega's Motion for Reconsideration (Cr. Dkt. 102) is **DENIED**.

DATED: February 2, 2021

B. Lynn Winmill
U.S. District Court Judge