# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>URIEL JOSE ORTEGA,<br><br>Defendant. | Case No. 4:14-cr-00255-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Before the Court is Defendant Uriel Jose Ortega's Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). Ortega filed his motion pro se and later supplemented it with the assistance of counsel. *See* Cr. Dkts. 116, 141.[1] He asks the Court to reduce his 22-year sentence to a 10-year sentence, which is the mandatory minimum for his offense. The Government opposes the motion. For the reasons explained below, the Court will deny the motion.

---

[1] Ortega submitted additional filings after the motion ripened. *See* Cr. Dkts. 142, 147-51. *See also* Dkt. 154. The Court considered these filings in deciding this motion. Also, throughout this opinion, citations to "Cr. Dkt." refer to docket entries in this criminal case. Citations to "Civ. Dkt." refer to docket entries in *Ortega v. United States*, No. 4:17-cv-00529 (D. Idaho).

# BACKGROUND

## A. The Offense

Ortega is serving a 22-year sentence for conspiracy to distribute methamphetamine. He is 36 years old; his scheduled release date is June 15, 2033; and he is housed in Victorville. *See https://www.bop.gov/inmateloc/* (last visited Oct. 20, 2025).

Ortega's conviction arose out of a traffic stop on July 10, 2014. Ortega was a passenger in a vehicle stopped for speeding. During the stop, officers found what appeared to be marijuana in Ortega's front pocket. A drug dog was called and alerted on the vehicle. Officers searched the vehicle and found guns, ammunition, and 1.3 kilograms of actual methamphetamine. *See* Cr. Dkt. 29, at 3.

Ortega and the driver were in the back of the patrol vehicle during the stop, and their conversation was recorded. At one point during the recording, the driver said something like, "Is that stuff dope?" Civ. Dkt. 91-1 at 21. Ortega said something like, "Should've just killed him." *Id.* The conversation continued, and the driver mentioned that she left the guns in her purse. *Id.* Ortega and the driver continued to talk, and the driver commented that law enforcement was likely to impound the car. Ortega responded by saying, "Let's hope they don't find it." *Id.* The pair then saw law enforcement find a lockbox. Ortega said, "There's a gun in there" and the driver asked, "Is it hot?" *Id.* Ortega told the driver, "I think they got

us [], I think they got us." *Id.* As the conversation went on, Ortega said something about not having "it" hidden in a good place. *Id.* at 21-22. He also said there were bullets in one of the bags. *Id.* at 22. When law enforcement found the methamphetamine, Ortega told the driver, "We're going down" and he advised her he had "deleted" his phone. *Id.*

Law enforcement asked Ortega about the .38 revolver found in the trunk. *Id.* at 19. He admitted he had purchased the revolver from someone else about one to two months before the stop. *Id.* Law enforcement asked Ortega and the driver about the two guns found in the red purse. *Id*. Ortega said he knew who they belonged to. *Id.* The driver said that she didn't know who they belonged to because she has a lot of people in the car. *Id.* Ortega and the driver were arrested and charged in Bonneville County. *See id.* at 6; Civ. Dkt. 38-1.

## B. The Plea & Sentence

Ortega was later indicted in this Court on two charges: conspiracy to distribute a controlled substance and possession with intent to distribute a controlled substance. He pleaded guilty to the conspiracy charge. The Court sentenced him to 22 years' incarceration. At the December 2015 sentencing, three law enforcement agents—two detectives from the Idaho State Police and a special agent with the Bureau of Indian Affairs—testified. *See Dec. 21, 2015 Minute Entry,* Cr. Dkt. 63. The Court heard testimony about the Defendant threatening law

enforcement involved in the investigation as well as his involvement in additional drug crimes in the District of Montana. *See Dec. 21 & 22, 2015 Trs.*, Cr. Dkts. 81, 82. The Government played the video from the traffic stop. *See Dec. 22, 2015 Minute Entry,* Cr. Dkt. 64. After this presentation and considering the Defendant's prior testimony, the Court applied the obstruction-of-justice enhancement and determined the Defendant did not accept responsibility. *See Dec. 22, 2015 Tr.*, Cr. Dkt. 82, at 45-58. The 22-year sentence the Court imposed was below the guidelines range.

### C.  The Motion for Compassionate Release

Ortega now asks the Court to release him early for a variety of reasons. He summarized the justifications for a compassionate release as including "unduly harsh sentence, rehabilitation, need to support aging family and parents, inability to earn FSA credits, inability to transfer to prison camp, halfway house or home confinement; deportation upon release; conditions due to COVID-19; and unwarranted sentencing disparity." *Ex. C to Motion*, Cr. Dkt. 116. In his supplemental brief, filed with the assistance of counsel, Ortega argued that the following circumstances considered together provide extraordinary and compelling reasons for a sentence reduction: "Mr. Ortega's significant rehabilitation efforts while serving a lengthy sentence, completion of almost ten years of that sentence, family situation and their support, and other relevant circumstances, including

changes in sentencing arguments and options in the intervening years, . . . ." *Supp., Cr. Dkt. 141, at 1.*

## LEGAL STANDARD

"A judgment of conviction that includes a sentence of imprisonment constitutes a final judgment and may not be modified by a district court except in limited circumstances." *Dillon v. United States*, 560 U.S. 817, 824 (2010) (quoting 18 U.S.C. § 3582(b)) (cleaned up). Congress provided one such exception in 18 U.S.C. § 3582(c)(1)(A)(i). *See generally United States v. Bryant*, 144 F.4th 1119, 1123 (9th Cir. 2025).

Section 3582(c)(1)(A)(i) provides that a district court may modify a final sentence in some situations. Before filing such a motion, defendants must exhaust their administrative remedies. *United States v. Keller*, 2 F.4th 1278, 1282 (9th Cir. 2021). Once exhaustion is satisfied, a district court may grant compassionate release only if three conditions are met: (1) extraordinary and compelling reasons warrant such a reduction, (2) the reduction is consistent with applicable policy statements issued by the Sentencing Commission, and (3) the reduction is warranted by the particular circumstances of the case after having considered the factors set forth in 18 U.S.C. § 3553(a). *Bryant*, 144 F.4th at 1123. The defendant bears the burden of establishing eligibility for a reduction by a preponderance of the evidence. *See, e.g., United States v. Sprague*, 135 F.3d 1301, 1306–07 (9th Cir.

1998); *Walton v. Arizona*, 497 U.S. 639, 650 (1990), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584, 609 (2002).

The Sentencing Commission policy statements at § 1B1.13 of the Sentencing Guidelines state that "extraordinary and compelling reasons" include: (1) a defendant's serious medical condition; (2) a defendant's age combined with serious deterioration in physical or mental health due to the aging process; (3) a defendant's family circumstances where the defendant becomes the only available caregiver for a close relative; (4) a defendant's suffering abuse by an employee or contractor of the Bureau of Prisons (the "BOP"); (5) any other circumstance or combination of circumstances that are "similar in gravity" to the four reasons just listed; or (6) a change in the law in cases where (a) the defendant received an "unusually long sentence," (b) the defendant has already served 10 years of that lengthy sentence; and (c) the change in the law would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed. *See* U.S.S.G. § 1B1.13(b). As another court in this District recently noted, the catch-all clause at U.S.S.G. § 1B1.13(b)(5)—that is, the clause indicating that courts may find an extraordinary and compelling reason for other circumstances, or combination of circumstances, of similar gravity to those set forth in subsections (b)(1) through (4)—affords courts "significant leeway in defining precisely what qualifies as an extraordinary and compelling reason."

*United States v. Schmidt*, No. 4:19-cr-00371-DCN, 2024 WL 1158331, at *2 (D. Idaho Mar. 18, 2024). Still, though, the Ninth Circuit has recently described the "catch-all" clause of § 1B1.13(b)(5) as "narrow" given that "it is restricted to reasons 'similar in gravity' to the listed examples." *Bryant,* 144 F.4th at 1124.

The policy statements also provide that before a sentence may be reduced, the Court must find that the defendant is not a danger to the safety of any other person or to the community. *Id*. § 1B1.13(a)(2).

Until recent amendments, U.S.S.G. § 1B1.13 addressed only motions brought by the Director of the BOP—and not those brought by defendants individually. *See United States v. Aruda*, 993 F.3d 797, 801–02 (9th Cir. 2021). District courts were free to consult the statements as persuasive authority, but the Ninth Circuit made clear that the statements were not binding. *Id.* at 802. However, under recent amendments, U.S.S.G. § 1B1.13 expressly applies to motions brought by the BOP Director *and* to those brought by individual defendants. U.S.S.G. § 1B1.13(a). The Ninth Circuit has since confirmed that the amended policy statement is binding in all compassionate-release cases, including defendant-filed motions. *Bryant,* 144 F.4th at 1125–26.

Defendant asks the Court to treat the policy statements as persuasive only,

given that he filed his motion before the Sentencing Commission amended

§ 1B1.13.[2] The Court will decline to do so. *See United States v. Crawley*, 140 F.4th

165, 170 (4th Cir. 2025) (concluding that the amended policy statement applied

even though defendant filed his motion before the amended policy statement

became effective); *United States v. Thompson,* No. CR 12-3013 JB/CG, 2024 WL

1557126, at *19 (D.N.M. Apr. 10, 2024) (same). But this ultimately won't make a

difference; the Court would issue the same ruling under the old regime—where the

old policy statements were only persuasive and the new policy statement was not

yet in place.

## DISCUSSION

### A. Exhaustion of Administrative Remedies

Before seeking judicial relief under 18 U.S.C. § 3582(c)(1)(A), a defendant

must first request compassionate release from the warden of his facility and either

exhaust administrative appeals or wait 30 days for a response. *See United States v.

Keller,* 2 F.4th 1278, 1282 (9th Cir. 2021). Ortega submitted a request for

compassionate release to the warden of FCI Herlong on July 14, 2022, which was

denied on September 19, 2022. Ortega has therefore satisfied the exhaustion

---

[2] Defendant filed his motion in July 2022—at a time when the Court had not yet resolved his motions under 28 U.S.C. § 2255. Resolving those motions was a complex, time-consuming process—involving three written opinions, an evidentiary hearing, supplementation of the record, and supplemental briefing.

requirement.

## B. Extraordinary and Compelling Reasons

### 1. Ortega's Catch-All Argument

One of Ortega's key arguments arises under the catch-all provision of
§ 1B1.13(b)(5). Subsection (b)(5) permits courts to recognize extraordinary and
compelling reasons based on other circumstances, or combinations of
circumstances, that are similar in gravity to those set forth in subsections (b)(1)
through (4). Here, Ortega argues that a combination of factors—his age at the time
of the offense, the disparity produced by sentencing under the "actual"
methamphetamine guideline versus the meth-mixture guideline, his rehabilitation,
and other considerations—together amount to an extraordinary and compelling
reason for a sentence reduction. The Court will address each component of this
argument, beginning with Ortega's assertion that he was a youthful offender.

#### a. Youth

Ortega committed the offense in July 2014, when he was 25 years old. *See
PSR,* Cr. Dkt. 59, at 3 (listing Ortega's date of birth as November 5, 1988). He says
this qualifies him as a youthful offender—one in his "early twenties." *See Supp.
Mtn.*, Cr. Dkt. 141, at 12. The government has not directly contended that Ortega's
age disqualifies him from being considered "youthful." But even so, a 25-year-old
is more accurately characterized as being in his mid-20s rather than in his "early
20s." Likely for that reason, defendants advancing youth-related arguments are

typically younger.[3]

Ortega seeks to bolster the "youth" component of this argument by pointing out that in 2023, when it promulgated the amendments to § 1B1.13, the Sentencing Commission offered an example of a defendant who might present extraordinary and compelling circumstances: commendable rehabilitation while incarcerated, *offense conduct in the late teens or early twenties*, and intervening changes in law or intervening Guidelines amendments that would likely produce a lower sentence today. *See Supp. Mtn.*, Cr. Dkt. 141, at 12 (citing U.S. Sentencing Comm'n, Amendments to the Sentencing Guidelines (April 27, 2023), p.7.15)). Ortega argues that his case precisely fits this example.

But the Ninth Circuit's recent decision in *United States v. Bryant,* 144 F.4th 1119 (9th Cir. 2025) forecloses at least part of the argument. *Bryant* held that youth at the time of the offense cannot qualify as an extraordinary and compelling reason at step one of the compassionate-release analytical framework because it is a preexisting fact, not a post-sentencing development. *Id.* at 1126–27. Instead, the

---

[3] *See, e.g., United States v. Bryant*, 144 F.4th 1119 (9th Cir. 2025) (defendant was 16 at the time of the offense); *United States v. McCoy*, 981 F.3d 271, 286 (4th Cir. 2020) (defendants were between 19 and 24 years old at the time of the offenses); *United States v. Maumau*, 993 F.3d 821 (10th Cir. 2021) (defendant was 20 at the time of the offenses); *United States v. Brooker*, 976 F.3d 228, 230 (2d Cir. 2020) (Defendant "joined the drug trafficking conspiracy that would land him in prison at 17; he was indicted at 20; and he was convicted and sentenced at 22."); *United States v. Fleming*, No. 4:95-CR-41-D, 2025 WL 1582349, at *4 (E.D.N.C. June 4, 2025) (defendant committed the subject offenses when he was 20, 21, and 22).

circuit held that youth may be considered at step three, when and if the district court evaluates the § 3553(a) factors and the defendant's history and characteristics. *Id*. Here is the relevant section of the *Bryant* decision, which explains the point:

> Thus, consistent with the binding definition in § 1B1.13, "extraordinary and compelling" generally refers to "post-sentencing factual developments," which do not include a defendant's age at the time of his offense.

> That does not mean, however, that youth can never be considered in ruling on a motion for compassionate release. . . . [T]he fact that a defendant was a minor at the time of his offense can be considered when weighing the § 3553(a) factors at the third step of the compassionate release analysis. *See* 18 U.S.C. § 3553(a) (considerations include the "history and characteristics of the defendant"). The third step is where district courts consider facts that existed at sentencing. But youth is not an extraordinary and compelling reason at step one, which focuses instead on developments that occur after a defendant has been sentenced. So long as a defendant identifies an extraordinary and compelling reason that fits within § 1B1.13's binding framework, a district court could decide under § 3553(a) that a defendant's youth is another factor supporting compassionate release. The statute allows for that possibility.

*Id.* at 1127 (internal case citation omitted).

Accordingly, the Court will not evaluate the "youth" component of Ortega's argument at step one; instead, it will consider the relevance of his age and subsequent maturation if it proceeds to step three, in the context of considering the § 3553(a) factors.

### *b. Methamphetamine Purity and Resulting Guideline Disparity*

The next component in Ortega's "catch-all"/§ 1B1.13(b)(5) argument arises from the fact that Ortega was convicted of a methamphetamine offense. At sentencing in 2015, the Court correctly applied the "actual" methamphetamine guideline, which produced a base offense level of 34. With the firearm and obstruction enhancements, and no reduction for acceptance, the total offense level was 38. The PSR correctly placed Ortega in Criminal History Category VI, which yielded a guidelines range of 360 months to life. *See Stmt. of Reasons* ¶ III, Cr. Dkt. 69. Recognizing that Category VI overstated his criminal history, however, the Court imposed a downward variance and treated him as if he were in Category IV when determining the sentence. With that variance in mind, the advisory range was 324 to 405 months. (Note, however, that this was a variance, not a departure. The correctly calculated guidelines range was 360 months to life).

If the same drug quantity had been evaluated under the methamphetamine mixture guideline, Ortega's base offense level would have been 30, and his total offense level would have been 34, which, in turn would have yielded a guidelines range of 262 to 327 months. With the same variance to Category IV, the corresponding, lower range would have been 210 to 262 months The choice between "actual" methamphetamine and meth mixture thus reduced the bottom of the *varied* guideline range by 114 months—nearly ten years. The Court notes that

since Ortega's sentencing, it has in some cases considered both the "mixture" and "actual" guidelines when fashioning a just sentence.

This development—the undersigned judge's evolving sentencing practices— is not new legislation, so it does not fall within § 1B1.13(b)(6).[4] The Court will therefore consider this argument under § 1B1.13(b)(5) alongside the other arguments Ortega advances.

At least one district court has rejected the notion that the disparity in the calculation of actual methamphetamine versus methamphetamine mixture is, by itself, a sufficient reason to conclude that there is an extraordinary and compelling reason within § 1B1.13(b)'s binding framework. *See United States v. Medina-Rodriguez,* No. 20-200021-JAR, 2025 WL 1114195, at *3 (D. Kan. Apr. 15, 2025). But the same court concluded that in some circumstances, the disparity may be a relevant consideration. *Id.* Other courts have rejected the argument that the Guidelines' purity distinction constitutes an extraordinary and compelling reason for a sentence reduction. *See, e.g., United States v. Lourde*, No. 1:18-CR-80(1), 2025 WL 148345, *6 (E.D. Tex. May 21, 2025) (citing numerous cases).

---

[4] Recall that § 1B1.13(b)(6) deals with a change in the law in cases where (a) the defendant received an "unusually long sentence," (b) the defendant has already served 10 years of that lengthy sentence; and (c) the change in the law would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed.

Having considered these authorities, the Court concludes that while the disparity between "actual" and "mixture" methamphetamine had a significant effect on Ortega's advisory range, it is not, standing alone, an extraordinary and compelling reason for a sentence reduction under § 1B1.13. At most, it may be considered as one factor within the broader catch-all analysis. As discussed below, however, even in combination with Ortega's rehabilitative record and other facts, the disparity issue does not persuade the Court that extraordinary and compelling reasons exist in this case.

### c. Rehabilitation

Ortega points to his rehabilitation as another factor supporting a sentence reduction. As with the methamphetamine disparity, rehabilitation, standing alone, cannot constitute an extraordinary and compelling reason. 28 U.S.C. § 994(t).

Here, although Ortega's record is not perfect, it does show sustained efforts, with exceptional performance in terms of his educational efforts. Ortega has completed numerous educational and vocational programs and he maintained steady institutional employment. He earned an Associate of Arts degree from Lassen Community College in 2023 and has continued his studies, now working toward a bachelor's degree. *See Ex. J,* Cr. Dkt. 142. He has also participated in parenting and life-skills programming and contributed meaningfully to the prison's Education Department, where he received recognition for his work. *See Pro Se*

*Motion,* Cr. Dkt. 116, at 8; Ex. A thereto. These achievements do not erase his

culpability, and his institutional record is less than perfect. Shortly after he was

sentenced, Ortega was disciplined for "Engaging in Sexual Acts, . . ." which

apparently involved masturbation. *Ex. M to Supp. Mtn*, Cr. Dkt. 142; *see also Gvt.

Ex. 3*, Cr. Dkt. 120-2 (noting that "Inmate denies he knew female was walking by

as he was masturbating"). More recently, between March and July 2025, Ortega

was disciplined for possession of a phone and related items, interference with staff,

and being in an unauthorized area. On balance, the record reflects significant

progress—particularly on the educational front—but also shows that Ortega has

more work to do in consistently following institutional rules.

### d. Status Points (Amendment 821)

At sentencing, the probation officer correctly calculated 24 criminal-history

points, which included two "status points," placing Ortega in Category VI. Even if

only one status point were applied after Amendment 821, he would still have 23

points—well above the 13-point threshold for Category VI. The amendment does

not change his Guidelines category. The Court's statement at sentencing that it

would treat Ortega as though he were in Category IV was part of the variance

analysis under § 3553(a), not a Guidelines recalculation. Accordingly, this aspect

of Ortega's "catch-all" is not persuasive.

### e. Marijuana Priors

Ortega also contends that some of his criminal-history points were based on minor marijuana convictions that would be treated less harshly today. But these convictions were correctly scored under the Guidelines in effect at the time, and no retroactive amendment removes them from his criminal history. While the changing legal landscape is noted, this argument does not materially advance the catch-all, or "combination" argument.

### f. Family Circumstances

Ortega seeks release in part to assist his aging parents. He has also described the recent death of his uncle, who played a significant role in his upbringing. The Court expresses sympathy for these family hardships. Even so, family circumstances may qualify under § 1B1.13(b)(3) only where the defendant is the sole available caregiver for an incapacitated spouse, partner, or minor child. Ortega has not shown that his parents or grandparents are incapacitated or that he is the only available caregiver. And the death of an extended family member, while difficult, does not fall within the scope of the policy statement. These circumstances therefore carry little weight in the analysis. (The Court has reviewed the sealed medical records documenting the health conditions of Ortega's grandparents, see Cr. Dkt. 147, Ex. Q, but concludes that this evidence does not alter the analysis.)

### *g. The Combination of Factors*

Taken together, Ortega's arguments do not establish an extraordinary and compelling reason for release. The Court has considered the significant disparity between the methamphetamine "actual" and "mixture" guidelines, as well as Ortega's educational achievements and rehabilitative progress. But these considerations are tempered somewhat by his recent disciplinary violations as well as the limited weight of his other arguments concerning status points, marijuana priors, and family circumstances. In short, while the record reflects progress and some mitigating circumstances, the combination of factors Ortega advances is not similar in gravity to those identified in § 1B1.13(b). The Court concludes he has not carried his burden at step one.

## C. Other Arguments

In addition to his "catch-all" argument, Ortega raises two additional, independent arguments: (1) concerns relating to his general health conditions and COVID-19; and (2) his ineligibility to earn First Step Act time credits.

### 1. Concerns Related to COVID-19 & General Health

Ortega argues that the conditions of confinement during the Covid-19 pandemic, coupled with his own prior infection amount to extraordinary and

compelling reasons for release. *See Attachment to Motion,* Cr. Dkt. 116, at 3-6.[5] He says that after contracting COVID-19 in 2020 he experienced "severe symptoms, including coughs, hot and cold chills, soreness, and painful muscle aches," and that prison lockdowns resulted in "reduced educational programming, and lack of work opportunities." *Id.* at 3.

The Court is not persuaded that these circumstances amount to an extraordinary and compelling reason for release. The record reflects that Ortega has recovered from COVID-19; he is vaccinated; and he does not have any medical condition that increases his risk. Courts have held that "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release . . . . " *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020); *see also, e.g., United States v. Hayes*, No. 4:17-cr-00289-DCN, 2021 WL 2533517, at *3 (D. Idaho June 21, 2021) ("Many courts have found that a vaccinated prisoner's risk of contracting COVID-19 does not rise to the level of an extraordinary and compelling reason, even in the presence of underlying health conditions.") (citing cases).

Ortega has not demonstrated that he faces an elevated personal risk of severe

---

[5] Ortga's counsel did not supplement this argument but did include updated medical records provided by Mr. Ortega. *See Defendant's Ex. N.*

illness despite vaccination.

Ortega has also submitted medical records documenting, among other things, a hiatal hernia, GERD, duodenal erosions, and Dupuytren's contracture affecting his right hand. *See* Cr. Dkt. 147, Ex. R (sealed). While these conditions may require treatment and cause discomfort, they are being managed by the Bureau of Prisons and do not constitute the kind of serious, debilitating medical condition contemplated in § 1B1.13(b)(1). Accordingly, Ortega has not established extraordinary and compelling reasons for release or for a sentence reduction based on his concerns surrounding COVID-19 or his health conditions.

### 2.  First Step Act Credits

Ortega also argues that his ineligibility to earn First Step Act time credits amounts to an extraordinary and compelling reason for release. The Court disagrees.

Challenges relating to the availability or application of time credits must be raised through the Bureau of Prisons' administrative process and, if necessary, by way of a habeas petition under 28 U.S.C. § 2241 in the district of confinement. A motion for compassionate release under § 3582(c)(1)(A) is not the proper vehicle for such claims.

Moreover, ineligibility to earn time credits is not comparable in gravity to the circumstances listed in U.S.S.G. § 1B1.13(b), which focus on serious medical

conditions, advanced age, family caregiving needs, abuse in custody, or changes in law producing unusually long sentences. Ortega's inability to participate in the First Step Act credit system does not constitute an extraordinary and compelling reason for release.

## D. Section 3553(a) Factors

Finally, the § 3553(a) factors do not favor release. Ortega's offense was serious. As detailed above, he pleaded guilty to conspiracy with intent to distribute in excess of 50 grams of actual methamphetamine. Officers found over 1.3 kilograms of methamphetamine in the car where he was a passenger, and he admitted to intending to distribute it in Montana. He possessed firearms in connection with the offense, and he suggested that they should have killed a law enforcement officer. The Court originally imposed a 22-year sentence—already a substantial downward variance from the guidelines range. That sentence reflected the seriousness of the crime, promoted respect for the law, provided just punishment, and protected the public. *See* § 3553(a)(2)(A)–(C). Reducing the sentence further at this point would undercut those purposes, particularly the need for deterrence and public protection. The Court has considered Ortega's age at the time of the offense, his rehabilitative efforts, family support, and the various other mitigating factors outlined in the brief. These mitigating factors do not outweigh the gravity of the underlying conduct or the continuing need for just punishment.

Accordingly, the § 3553(a) factors independently foreclose relief.

## ORDER

**IT IS ORDERED that** Defendant's Motion for Compassionate Release (Cr. Dkt. 116) is **DENIED.**

DATED: October 20, 2025

B. Lynn Winmill
U.S. District Court Judge